609 A.2d 343

**STATE of Maryland**

v.

**Mike Mercado ENRIQUEZ.**

**No. 148, Sept. Term, 1991.**

Court of Appeals of Maryland.

July 24, 1992.

Gary E. Bair, Asst. Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen. and M. Jennifer Landis, Asst. Atty. Gen., on brief), Baltimore, for petitioner.

George E. Burns, Jr., Asst. Public Defender, argued and on brief (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case concerns Maryland Code (1989 Repl.Vol.), § 9–105 of the Courts and Judicial Proceedings Article which provides: "One spouse is not competent to disclose any confidential communication between the spouses occurring during their marriage." The issue is whether the statutory privilege is applicable to a marital communication made by the husband to his wife ten days after the husband had criminally assaulted the wife.

## I.

Mike Mercado Enriquez was convicted by a jury in the Circuit Court for Montgomery County of common law battery and of two counts of second degree sexual offense in violation of Md.Code (1992), Art. 27, § 464A. The court (Beard, J.) merged the battery conviction into the sexual offenses and sentenced Enriquez to concurrent terms of seven years' imprisonment, with all but eighteen months suspended.

Before trial, relying on the statutory privilege, Enriquez moved *in limine* to preclude the State from offering evidence of any marital communications initiated by him with his wife. The court ruled that the statute was inapplicable where one spouse is the victim of offenses committed by the other. Immediately before the wife-victim took the stand, Enriquez again moved to preclude any testimony from her recounting confidential marital communications. The court said that the wife's testimony relating to the alleged crime perpetrated upon her by her husband was an "exception" to the privilege, and that it would rule on the admissibility of any other marital communications if and as they arose.

Levina Enriquez testified that on the day of the crime, she was Enriquez's wife. She said that her marriage was deteriorating and that she was considering terminating it. She stated that on February 17, 1989, after she had gone to bed, her husband came home around 11:30 p.m. According to Levina's testimony, her husband told her that he "was

not going to do anything to [her] tonight" and they both fell asleep. Levina said that she was awakened around 2:00 a.m., with her husband yanking at her pajama bottoms; that he forcibly removed them against her will and then engaged in nonconsensual vaginal sexual intercourse with her for thirty minutes; that she did not hug or kiss him during that time; that he said, "Come on, it will be easier on you and I will finish quicker if you help me out." Levina testified that when she refused, Enriquez told her, "Okay, then I'm going to take the butt"; that he placed his penis in her anus and engaged in anal sexual intercourse with her; that she told him, "I wish you knew how this felt, I wish I could cram something up you so you'd know how bad it hurts"; that her husband then secured a large dildo and put it in her vagina while continuing to have anal sexual relations with her; that throughout this episode, she was crying and asking her husband to stop; that because both penetrations were painful for her, she removed the dildo from her vagina and threw it across the room; that her husband retrieved the dildo, reinserted it, and resumed anal sexual intercourse; that she again removed the dildo, after which her husband once again retrieved it and attempted to force it inside her anus; and that she cried and screamed so loudly that Enriquez held a pillow over her face and punched the pillow with his fist. Levina said that her husband threatened to kill her and put her body in the woods, and that thereafter he continued to have anal sexual relations with her until 5:00 a.m., when both spouses fell asleep.

In the morning, Levina went to work while Enriquez stayed home. At work, Levina discovered blood in her pants. She was examined by a doctor who found fresh fissures around the site; the physician advised Levina not to return home, and she stayed for three nights at a friend's house. She then sought help at the Crisis Center, and later moved into an abused persons' shelter. An employee of the Crisis Center assisted Levina in seeking a protective order and in filing criminal charges against her husband.

Levina further testified that on February 27, 1989, she was at work when she received a telephone call from her husband. The prosecutor asked her to relate the conversation, at which point Enriquez interposed an objection which the court overruled. Levina answered, "That he was sorry ... and he wanted us to get back together, and that he was in a treatment center." Enriquez moved for a mistrial, arguing that the marital communication was inadmissible and prejudicial because it included an apology and an indication that he was in need of treatment. The motion was denied.

A medical examination revealed that Levina exhibited fresh bruises and rectal fissures which could have resulted from anal intercourse. There was testimony from a police officer that he had taken a statement from the husband in which he stated that he and his wife had engaged in anal sex in the past with mutual consent. According to the statement, Enriquez acknowledged engaging in sexual acts with his wife on the day in question, including the use of a dildo, which his wife told him hurt her and, as a result, caused her to scream. In his statement, the husband admitted putting the pillow over his wife's face to silence her screams; he said, however, that he did not hit Levina or threaten her in any way.

■ Following his convictions, Enriquez appealed to the Court of Special Appeals, contending that it was error to admit his telephone conversation with Levina[1]. That court reversed the convictions in an unreported opinion and remanded for a new trial; it held that the admission of the challenged statement violated the statutory marital communication privilege. The State petitioned for a writ of certiorari which we granted.

---

1. Enriquez does not contend that his threats to Levina or his statements in the course of or in furtherance of the assault were privileged. Clearly, crimes against the other spouse are not privileged. *See* 5 Lynn McLain, *Maryland Evidence*, § 505.2 (1987).

## II.

The State contends that evidence of the husband's telephonic communication to Levina was properly admitted by the trial court, because an exception to the statute exists in prosecutions of one spouse for crimes against the other. Relying on scholarly treatises and cases from other jurisdictions, it argues that the exception was widely recognized at common law, and the Maryland statute is merely declaratory of the common law. It further argues that the exception has been recognized in Maryland, citing *Harris v. State*, 37 Md.App. 180, 376 A.2d 1144 (1977). The State traces in detail the legislative history of the statute from which it infers the existence of the exception. Furthermore, it urges, public policy mandates that the exception be applied in this case.

Enriquez argues that the admission in evidence of the challenged statement violated § 9–105 because his wife was not competent to disclose it. He maintains that the exception that exists in cases where one spouse is a victim of the other does not relate to the statutory marital communication privilege. This argument, he contends, is buttressed by the fact that if a wife is beaten in private, she is competent to testify to the crime because prosecution would be impossible without her testimony. In the usual case, however, prosecution would be possible, according to Enriquez, without divulging marital communications, and thus a wife can testify that a husband assaulted her without relating that he later acknowledged to her that he committed the crime. Finally, Enriquez relies upon *Coleman v. State*, 281 Md. 538, 380 A.2d 49 (1977), for the proposition that § 9–105 admits of no exceptions and since the challenged statement was clearly a marital communication, it was improperly admitted in evidence.

## III.

In *Coleman v. State, supra,* a case decided after the Court of Special Appeals decided *Harris v. State, supra,* we

considered the statutory marital communication privilege set forth in § 9–105 of the Courts Article. In that case, the evidence disclosed that Coleman had raped a woman in his apartment, forced her to submit to various perverted sex acts, and stolen cash and a diamond ring from her purse. A witness who resided in the same apartment building as Coleman testified that she was present in his apartment during the commission of the crimes, and she corroborated the victim's version of events. The witness testified that, at Coleman's request, she put the diamond ring that he stole from the victim in a cabinet in his apartment. Subsequently, she gave a statement to the police. Coleman's wife testified that he telephoned her from jail and asked her to go to his apartment (the Colemans were estranged) and retrieve the diamond ring, because he feared that the woman who had witnessed the crime was going to give the ring to the police. Mrs. Coleman then went to visit the witness, obtained the ring from her, and gave it to the police. At Coleman's trial, over his objection, his wife testified to the substance of his telephonic request to retrieve the ring from the apartment.

Following his convictions, Coleman appealed; he contended that the challenged communication between himself and his wife was improperly admitted in evidence in violation of § 9–105. In affirming the convictions, the Court of Special Appeals concluded that the incriminating marital communication was not intended to be confidential and hence the statute was inapplicable. It also held that because the marriage had, for all practical purposes, ended at the time the communication was made, the statute did not apply. Further, it held that since the communication was made in furtherance of a crime, the statutory privilege had no application. *Coleman v. State*, 35 Md.App. 208, 370 A.2d 174 (1977).

Upon our grant of certiorari, we explained the policy reasons for the statutory marital communication privilege, namely: "(1) that the communications originate in confidence, (2) the confidence is essential to the relation, (3) the

relation is a proper object of encouragement by the law, and (4) the injury that would inure to it by the disclosure is probably greater than the benefit that would result in the judicial investigation of truth." We noted that while there was some disagreement among the authorities, "the privilege appears to be of common law origin." 281 Md. at 541, 380 A.2d 49. We observed that the privilege was separate and distinct from two rules of the common law which preceded it: (1) the marital disqualification which prohibited a spouse from testifying in favor of the other spouse and (2) the privilege of a husband or wife not to testify to any facts against the other—a privilege said to be justified, in part, by a need to preserve marital confidences. We said that when a trend appeared, in the middle of the 19th century, to abolish or restrict these common law marital disqualifications, the precursor to § 9–105 for confidential marital communications between spouses was enacted by ch. 109 of the Acts of 1864; that it was repealed in 1876; and thereafter again enacted by ch. 545 of the Acts of 1888. Thus, contrary to the State's suggestion, we did not hold in *Coleman* that § 9–105 was merely declaratory of the common law.

In *Coleman*, 281 Md. at 542, 380 A.2d 49, we acknowledged that communications between husband and wife "occurring during the marriage are deemed confidential if expressly made so, or if the subject is such that the communicating spouse would probably desire that the matter be kept secret, either because its disclosure would be embarrassing or for some other reason." We said that it was not necessary that the spouse claiming the privilege establish the confidential nature of the communication, as there is a rebuttable presumption that marital communications are confidential and privileged. The presumption is rebutted, we explained, where it is shown that the communication was not intended to be confidential. *Id.* at 543, 380 A.2d 49.

In applying § 9–105 in *Coleman*, we said that the statute contains no exceptions. In this regard, we held that the legislature recognized the need for an express exception for

a statutory privilege protecting certain communications between accountants and their clients, and between psychiatrists or psychologists and their patients. *See* § 9–110 and § 9–109 of the Courts Article, respectively. Because § 9–105 contains no exceptions, we declined to add words to the statute to judicially create exceptions for which the legislature had not made express provision. *Id.* at 546–47, 380 A.2d 49.

■ As already observed, the substance of the marital communication in this case was that Enriquez was sorry for his actions; that he wanted a reconciliation with Levina; and that he was undergoing treatment. The presumption that this communication was intended to be confidential, and not disclosed to the police, was simply not rebutted at trial. This is especially so since, as in *Coleman,* the marital communication amounted, implicitly, to an admission of a crime. Thus, as in *Coleman,* the wife was incompetent under the statute to divulge the marital communication over her husband's objection because it was made during marriage and was confidential in nature.

In the fifteen years since we decided *Coleman,* the legislature has taken no action to add any express exceptions to the statute. Since the legislature is presumed to know the law, *Jones v. State,* 307 Md. 449, 454, 514 A.2d 1219 (1986); *Briggs v. State,* 289 Md. 23, 33–34, 421 A.2d 1369 (1980); *Annapolis v. Annap. Waterfront Co.,* 284 Md. 383, 393, 396 A.2d 1080 (1979); *Police Comm'r v. Dowling,* 281 Md. 412, 419, 379 A.2d 1007 (1977), and it did not amend the statute, we conclude that it intended that our interpretation of the statute in *Coleman* should obtain.

■ Nor do we find merit in the State's claim that even if it was error to admit the challenged marital communication, the error was harmless beyond a reasonable doubt in view of the overwhelming evidence of Enriquez's guilt. While it is true that Levina testified that the sexual actions performed on her were nonconsensual, Enriquez claimed that they were consensual. His statement to the police was

consistent with this defense. Because the State sought to admit the challenged statement in evidence to show a consciousness of guilt on Enriquez's part, and thus refute his defense that the sexual acts in question were consensual, we are unable to find that the improperly admitted evidence was harmless beyond a reasonable doubt. *See Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

JUDGMENTS AFFIRMED, WITH COSTS.