633 A.2d 918

**Roland MAZZONE**

v.

**STATE of Maryland.**

**No. 335, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 7, 1993.

Russell J. White (White & Karceski, on the brief), Towson, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County of Towson, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and ALPERT and WENNER, JJ.

WILNER, Chief Judge.

Appellant, Roland Mazzone, was convicted in the Circuit Court for Baltimore County on four counts of conspiracy to violate the controlled dangerous substance laws, for which he received substantial terms of imprisonment. He makes four complaints in this appeal, three of which concern wiretaps that were placed on his home and business telephones. His fourth complaint goes to the court's refusal to permit one of his two attorneys to remain in the case because that attorney also represented appellant's wife, who had been charged as well.

It will not be necessary for us to address most of the issues raised by appellant, for we find that the wiretap orders were invalid and that the court erred in denying appellant's motion to suppress the evidence obtained as a result of them.

### Underlying Facts

The relevant facts are not in dispute. In June, 1989, the Harford County Narcotics Task Force began an investigation into suspected cocaine distribution by one Carl Briscoe. In the course of that investigation, the task force came to suspect that appellant was associated with Briscoe in the distribution ring. Appellant lived and did business in Baltimore County. On June 19, 1991, the State's Attorney for Baltimore County filed with a judge of the Circuit Court for that county *ex parte* applications to intercept and record conversations to and from two telephones—one at appellant's home and one at his business, Valley View Inn—for a 30-day period commencing June 20 and ending July 20, 1991.

The judge promptly granted the State's Attorney's application. On June 19, he signed four orders authorizing the requested interceptions. Two of the orders were directed to the telephone company; they required the company to furnish assistance to the designated police officers to accomplish the two wiretaps. The other two orders specifically authorized the interceptions, more or less as requested, subject to certain conditions. In those orders, the court directed that the interceptions be conducted "in such a way as to minimize the

interception of communications not otherwise subject to interception of communications under Title 18, United States Code, Section 2510–2520, and the Courts and Judicial Proceedings Article, Section 10–401 through 10–414, of the Annotated Code of Maryland."

Contemporaneously with these orders, the judge also approved in writing Minimization Guidelines which were to apply to the authorized interceptions. In those Guidelines was a section dealing with privileged communications. It stated, in relevant part:

"Under Maryland Law, we will be concerned with privileged communications involving lawyer-client, *husband-wife*, priest-penitent, accountant-client and psychiatrist/psychologist-patient relationship. Contact the above listed Assistant State's Attorneys for Baltimore County for instructions if you anticipate that you are about to monitor such a conversation and cannot affirmatively decide to minimize it completely. *If it appears that the communication does discuss the commission of a designated crime itself, the privilege is breached and the whole conversation is to be monitored.* If it appears that the communication might discuss the commission of a designated crime then spot monitoring shall be employed. If the communication does not involve the commission of a crime then the privilege applies absolutely and must be completely minimized as soon as the speakers identify themselves.

All husband and wife communications are privileged; *but discussions which involve the commission of the designated crime may be intercepted. All other communications must be minimized and spot monitoring must be employed carefully.*"

(Emphasis added.)

On July 12, 1991, pursuant to further *ex parte* applications by the State's Attorney, the court terminated the interceptions authorized by the June 19 order and entered new orders authorizing a continuation of the interceptions on the two telephones that were the subject of the June 19 order and two

additional telephones located at Valley View Inn. As it had done before, the court implemented this new authority through four orders directed to the telephone company (one for each telephone), four orders authorizing the interceptions (one for each telephone), and one set of Minimization Guidelines approved in writing by the court.

In the Minimization Guidelines approved on July 12, the court stated initially that the Minimization Guidelines approved on June 19 "will also apply to the operational procedures" authorized on July 12, except that "the following changes will be incorporated." Among those changes was a section dealing with privileged communications, which stated:

> "Information gathered from the wiretaps conducted over Roland Mazzone's residence telephone as well as the business telephone of the Valley View Inn has identified Mazzone's wife, Elizabeth Ann, as being involved in this illegal controlled dangerous substance operation. *Thus the privilege that is afforded to them under Maryland Law as husband and wife is breached during the interception of conversations that pertain to Mazzone's illegal drug activity.*
>
> All other instructions found under this subheading in the attached Minimization Guidelines dated June 19, 1991, will be followed during the intercept of the telephone lines identified herein."

(Emphasis added.)

The record indicates that some conversations between appellant and his wife were intercepted and recorded, although it is not entirely clear how many.[1] One of the officers monitor-

---

1. In accordance with the wiretap orders, logs were kept of each intercepted conversation. Additionally, transcripts were made of those conversations that were recorded. We are unable to find in the record either the logs or the transcripts, although at least parts of both were discussed at the motions hearing and at trial and were admitted into evidence. In their briefs, counsel have centered their argument on two particular conversations between appellant and his wife. We don't know whether those were the only two that were intercepted or simply the only two of which an issue is made.

ing the operation acknowledged during the suppression hearing that "information obtained as a result of the intercepted calls between Mazzone and his wife, either the information directly or indirectly obtained as a result of those calls was used before the Grand Jury." The content of two such conversations was admitted into evidence at trial. The first was a call from Mazzone to his wife at home on June 24, 1991, during which Mrs. Mazzone insisted that appellant bring some cocaine home with him—that he should not "come home empty handed." The second was a call from Mrs. Mazzone to appellant at the Valley View Inn, in which she informed him that David Vita had arrived at their house. Evidence was presented that Mr. Vita was appellant's supplier.

### Discussion

■ Appellant urges that, in authorizing the wiretaps, the court erred in its conclusion that the privilege for marital communications did not apply (or was waived or breached) with respect to conversations between appellant and his wife dealing with criminal activity and that, as a result, the order was not in strict compliance with the requirements of applicable State law. The entire order, he therefore asserts, was invalid, and all communications that were intercepted pursuant to those orders must be suppressed.

The State acknowledges that, under the holdings in *Coleman v. State*, 281 Md. 538, 380 A.2d 49 (1977) and *State v. Enriquez*, 327 Md. 365, 609 A.2d 343 (1992), marital communications remain privileged even if they concern criminal activity, and that, to the extent the Minimization Guidelines stated otherwise, they were wrong. The State argues, however, that the Minimization Guidelines are not part of, or "preconditions" to, the *ex parte* orders themselves but merely *implement* those orders and that, as a "post condition," minimization is not required to be in *strict* compliance with the statutory requirements but only in *substantial* compliance. Regarding the offending intercepts as mere "snippets," it contends that there *was* substantial compliance and that the orders themselves should not be declared invalid because of this minor

transgression. This, of course, goes to appellant's broad-scale attack on the wiretap orders themselves. The State defends the admission of the two offending conversations into evidence solely on the ground of harmless error.

We begin our analysis by reviewing briefly the nature of the privilege for marital communications. In *Coleman v. State*, *supra*, 281 Md. 538, 380 A.2d 49, the Court discussed the origin and scope of that privilege, as currently set forth in Md.Code Cts. & Jud.Proc. art., § 9–105. It explained, first, the jurisprudential basis for the privilege:

> "The policy reasons underlying the privilege for confidential communications between husband and wife are (1) that the communications originate in confidence, (2) the confidence is essential to the relation, (3) the relation is a proper object of encouragement by the law, and (4) the injury that would inure to it by disclosure is probably greater than the benefit that would result in the judicial investigation of truth."

*Id.* at 541, 380 A.2d 49.

In considering the application of the privilege, the Court held that communications between husband and wife occurring during the marriage are deemed confidential "if expressly made so, or if the subject is such that the communicating spouse would probably desire that the matter be kept secret, either because its disclosure would be embarrassing or for some other reason." *Id.* at 542, 380 A.2d 49. It is not necessary, the Court continued at 543, 380 A.2d 49, that the spouse claiming the privilege establish the confidential nature of the communication, for "[g]enerally, the courts have presumed that communications between husband and wife are confidential and privileged...." That presumption can be rebutted, and it is rebutted where it is shown that the communication "was not intended to be confidential, or was made to, or in the presence of a third party."

Addressing more particularly the issue raised here, the *Coleman* Court noted that the presumption of confidentiality applies particularly where "the marital communication amounts to an admission or confession of a crime." In that

regard, the Court reversed a holding of this Court that the privilege was not applicable "where the confidential communication is made in furtherance of a crime." *Id.* at 545, 380 A.2d 49. Rather, it held that, as no such exception was stated in the statute, the privilege was indeed applicable to those kinds of communications, citing as authority a 1946 Louisiana case and a 1936 Missouri case. This holding was confirmed in *State v. Enriquez, supra,* 327 Md. 365, 609 A.2d 343, where the Court held privileged and inadmissible a statement by the defendant to his wife apologizing for having viciously assaulted her. It noted that, in the 15 years since *Coleman* had been decided, the Legislature had taken no action to add any express exceptions to § 9–105, and so "we conclude that it intended that our interpretation of the statute in *Coleman* should obtain." *Id.* at 373, 609 A.2d 343.

█ These two cases establish that (1) marital communications are presumed to be privileged, and (2) because they are privileged, they are also inadmissible in evidence. Although, as we indicated, the *Coleman* Court held that the presumption of privilege may be rebutted by evidence that the communication was not intended to be confidential, as where it is made in the presence of a third party, we do not take that to mean that the presumption is rebutted where, as here, the presence of the third party is unknown to the couple. Indeed, the Legislature has made that unmistakably clear in this particular context by declaring in Cts. & Jud.Proc. art., § 10–407(d)— part of the State wiretap law—that "[a]n otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this subtitle, does not lose its privileged character."

Section 10–407(d) is the linchpin of appellant's argument that all of the evidence obtained under the orders must be suppressed. He views it as establishing the unlawfulness of intercepting, or authorizing the interception of, confidential marital communications. That provision does not do what appellant claims it does, however, at least not directly. It is part of the section dealing with the disclosure and use of

communications that have already been intercepted through wiretap and, read in that context, it simply precludes persons obtaining such communications from using them in any way inconsistent with the privilege. Section 10–407(d) is not, in other words, at least facially, a limitation on what may be intercepted. That is dealt with in §§ 10–402 and 10–408, which say nothing at all about privileged communications.

To the best of our knowledge, with but one exception, the courts that have dealt directly with this issue have concluded that it is not unlawful to intercept marital communications pertaining to the commission of a crime if done pursuant to a valid order. We hasten to add, however, that, in each of those cases, that conclusion rested on the underlying premise that the privilege itself did not encompass those kinds of communications. *See U.S. v. Malekzadeh,* 855 F.2d 1492 (11th Cir. 1988); *U.S. v. Stevens,* 800 F.Supp. 892 (D.Hawaii 1992); *U.S. v. Plescia,* 773 F.Supp. 1068 (N.D.Ill.1991); *People v. Watkins,* 63 A.D.2d 1033, 406 N.Y.S.2d 343 (1978); compare *State v. Arata,* 438 So.2d 1032 (Fla.Dist.Ct.App.1983). Wigmore, McNaughton, and Reiser, in the supplement to 8 Wigmore, *Evidence* § 2338, state that "[a] conversation between husband and wife, intercepted through an authorized wiretap, is not covered by the marital privilege where the spouses are discussing and planning illegal acts," but that statement too, as the footnotes to it make clear, is based on an assumption that the privilege itself does not apply in that circumstance. Those authorities, therefore, are of no direct assistance to us.

Maryland's adherence to the contrary view [2] is what clouds the issue. It comes down to whether the Legislature, through

---

**2.** In addition to the Federal courts, the courts in Kentucky, Maine, South Dakota, Texas, and Wisconsin adhere to the view that marital communications are not privileged when they pertain to criminal activities. *See Gill v. Commonwealth,* 374 S.W.2d 848 (Ky.1964); *State v. Smith,* 384 A.2d 687 (Me.1978); *State v. Witchey,* 388 N.W.2d 893 (S.D.1986); *Goforth v. State,* 100 Tex.Crim. 442, 273 S.W. 845 (App. 1925); *State v. Doney,* 114 Wis.2d 309, 338 N.W.2d 852 (App.1983). It appears, however, that the courts in Florida, Illinois, and Indiana, in addition to those in Louisiana and Missouri, follow Maryland's view that such confidential communications are protected by the marital

some combination of § 9–105, § 10–407(d), and the limitations and minimization requirements in § 10–408, intended for marital communications subject to the privilege under § 9–105 to be immune from interception under § 10–408. Against that proposition is the fact that § 9–105 is part of the subtitle of the Cts. & Jud.Proc. article dealing with *witnesses* and is couched in terms of the *competency* of a spouse to disclose confidential communications. The *Coleman* Court, though emphasizing the strong public policy behind the privilege, nonetheless dealt with it as a matter of evidence law. From a narrow, technical point of view, therefore, § 9–105 protects only against evidentiary disclosures and thus would be violated only when protected communications are disclosed, over objection, in some judicial or quasi-judicial proceeding. Section 10–407(d) is not facially inconsistent with that view; it can be read as simply preserving the privilege, declaring that it is not lost because the confidential communications have been overheard by a third party through the device of a wiretap.

It would appear that most prosecutors and trial courts do not take such a narrow view, however. It is routine for *ex parte* orders or minimization guidelines attached to them to have provisions precluding or limiting the interception of legally privileged communications. *See* C. Fishman, *Wiretapping and Eavesdropping,* §§ 98, 160, recognizing the problem and recommending specific language in such orders or guidelines. Indeed, Mr. Fishman suggests that "if a married couple's home is to be bugged, it is best, unless the husband and wife are the only suspects, to permit monitoring only when a third party is present with the husband and/or wife in the premises." *Id.* at § 98. The cases permitting interceptions of marital communications dealing with criminal activity rested, as we said, on the fact that, in those jurisdictions, those kinds of communications were not protected by the privilege,

communication privilege. *See State v. Arata, supra,* 438 So.2d 1032; *People v. Krankel,* 105 Ill.App.3d 988, 61 Ill.Dec. 565, 434 N.E.2d 1162 (1982); *Leonard v. State,* 537 N.E.2d 480 (Ind.1989).

not on the basis that the interception of privileged communications was permissible.

The rationale for precluding the interception of legally privileged communications is really self-evident. As *Coleman* indicates, the privilege is grounded on a clear statement of public policy that confidentiality is "essential" to the marital relationship and that the preservation of that relationship is more important than the judicial search for truth. That being so, it is difficult to imagine on what basis that underlying public policy should give way to authorized (or unauthorized) eavesdropping by police agents. The intrusion into and disruption of the marital relationship flowing from the unsuspected electronic eavesdropping by police agents into private conversations between the couple is at least as dramatic and inimical as that occurring when one party seeks to disclose a confidence in court.

To accept the State's argument would be to countenance the interception of all manner of privileged communications so long as they either did not get into evidence or, if they did, were found to be "harmless" in the particular case. The issue, in other words, is not just communications relating to criminal activity but to all marital communications. We do not believe that the Legislature intended that result, and we therefore conclude that the interception of privileged communications is not permissible and must, through appropriate minimization procedures, be guarded against.

That brings us to the question of whether this preclusion is to be regarded as a "precondition," requiring strict compliance, or an implementing "post condition," for which substantial compliance will suffice. This dichotomy is a well-established part of wiretap law and was described thusly in *State v. Bailey*, 289 Md. 143, 153–54, 422 A.2d 1021 (1980):

"The difference between the two cases is clear. The statutory provisions which require the wiretap order to conform to specific minimum guidelines are those which the legislature perceives to contain minimum safeguards to constitutional rights. Once the directives of the statute have been

met and a valid order has been issued, compliance, at least in the area of minimization of unauthorized communications and service of inventory, can be judged by a more lenient substantial compliance standard."

*See also Howard v. State,* 51 Md.App. 46, 442 A.2d 176 (1982).

The State's position as to this is that the error here was in the Minimization Guidelines, not the *ex parte* orders, that the orders themselves were therefore in full and strict compliance with the statutory requirements, and that, accordingly, the error must be viewed under the substantial compliance standard. The State, in other words, looks not at *what* was authorized but at *where* it was authorized. We cannot accept that distinction.

Both Federal and State law require every order and extension to contain a provision that the authorization to intercept "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this subtitle." Md.Code Cts. & Jud.Proc. art., § 10–408(e); 18 U.S.C. § 2518(5). That requirement is principally implemented through monitoring instructions or minimization guidelines approved by the authorizing judge at the time the *ex parte* order is entered. In *State v. Baldwin,* 289 Md. 635, 644, 426 A.2d 916, *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 144 (1981), the Court approved the use of written directives "independent of the wiretap order itself, given at the time the order is executed" to effectuate specific implementation requirements not expressly required to be in the order itself.

Normally, these monitoring instructions, or as they were termed in this case Minimization Guidelines, simply make more specific, often by way of example, the more general conditions and requirements in the order itself—when to go to spot monitoring, when to stop listening, when to stop recording. To the extent that they merely explain the scope and conditions of the order, they are, indeed, implementing provisions. What minimization guidelines *cannot* validly do, however, is authorize something that the statute prohibits, for

even the order cannot do that, and therein lies the fallacy in the State's position. If the *ex parte* orders had included language permitting the interception of privileged communications, they would have been invalid as not being in strict compliance with § 10–408(e)(3). All evidence obtained pursuant to the invalid orders would have had to be suppressed. It is not permissible, in our judgment, for the State to circumvent the strict compliance standard by putting the offending provision in the minimization guidelines and then claiming that it is a "post condition" subject to the more lenient substantial compliance standard.

Through the language in the Minimization Guidelines, the police were erroneously authorized by the court to intercept communications that were legally privileged, and, pursuant to that authority, they did in fact intercept, record, and use such communications. The error may well have been an innocent and inadvertent one, but its nature and effect was no different than if it had been in the order. itself. It is for this reason that we conclude that the court erred in denying the motion to suppress the fruits of the wiretaps.

JUDGMENTS REVERSED; COSTS TO BE PAID BY BALTIMORE COUNTY.