GATTUS *v.* STATE

[No. 146, October Term, 1953.]

590

*Decided May 27, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Douglas N. Sharretts,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellant.

*H. Clifton Owens, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *J. Harold Grady, Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence on a conviction of the crime of bookmaking.

An application for a search warrant was made to the Honorable Joseph R. Byrnes, Associate Judge of the Supreme Bench of Baltimore City, by Lieutenant Joseph

J. Byrne, of the Baltimore City Police Department, on December 19, 1952, which alleged that believing the law in relation to a bookmaking establishment was being violated in an automobile bearing Maryland License No. 500-300, listed to one Maryann R. Gattus, 617 North Point Road, Lieutenant Byrne instructed officers William Hogan and John Livesay to investigate this complaint. On December 18, 1952, those two officers went to the vicinity of the Pennsylvania Railroad Hump and North Point Road where they noticed an automobile bearing the aforesaid license number pull into a parking lot on the corner of North Point and Bayview Roads. A white man " who is described as being about 30 years of age, 5 feet 8 inches tall, weighing about 145 pounds, wearing glasses and a dark overcoat," left this automobile and entered Jones' Tavern. After a few minutes this man came out of the tavern holding an Armstrong scratch sheet in his hand and making pencil notations thereon. As he started to reenter the said automobile, a short, stocky man, wearing a brown leather jacket, came hurriedly from the tavern and called to the described man: "Wait a minute." This man then approached the described man and said: "Give me five to win on Bets Reward", and handed the described man some United States currency which he accepted and put in his pocket. The described man then glanced at the scratch sheet and made a notation on same and then said to the short, stocky man: "Okay". The described man then entered the described automobile and drove to the entrance of the Pennsylvania Railroad Hump where he entered and again parked the said automobile on a lot across from a small building, which appeared to be a railroad office. Then, as the described man got out of the said automobile, six men at intervals came out of this office building. After a short conversation with the described man, each of these six men took a scratch sheet from the described man and after glancing at same, returned it to him together with some United States currency, which the described man accepted. After about fifteen minutes

the described man reentered the said automobile, drove back to North Point Road and went south toward Eastern Avenue. Officers Hogan and Livesay then left the vicinity. "Bets Reward" was the name of a race horse entered to run in the fifth race at the Charles Town Race Track on December 19, 1952. This application asked for a search warrant to search the said automobile and the pockets of all persons found in the said automobile who were actively participating in bookmaking activities, and to arrest the above described white man and all other persons found in said automobile who were actively participating in bookmaking activities and to seize all paraphernalia and other material pertaining to bookmaking.

As a result of that application, Judge Byrnes issued the search warrant reciting the probable cause in the application (*Goodman v. State*, 178 Md. 1, 7, 8, 11 A. 2d 635), and authorizing Lieutenant J. J. Byrne, with assistants, to enter and search the above described automobile for rundown sheets and other racing forms and to bring in the racing paraphernalia so found and the body of the said described white man and all other persons found in the said automobile who were actively engaged in the unlawful operation of gambling on the races.

On December 19, 1952, at approximately 1 P.M., Lieutenant Byrne, with the aforesaid search warrant and with other officers, took a position at the Pennsylvania Railroad Bridge, near the "Hump", which was approximately two hundred yards within the limits of Baltimore City. The officers were in plain clothes with no distinguishing marks on their automobile. They sat in the police car facing toward Baltimore County on the North Point Road. Shortly thereafter an automobile, bearing the license number set out in the search warrant, approached from a dirt road which curved in such a manner as to gradually merge with the road on which the police car was parked. As this car, with its window open, came along the right side of the police car, "as

close as you could get to him", Lieutenant Byrne was sitting on the front seat with the right window open and leaning half way out of that window. He blew his whistle and called "Police, stop, we have a warrant". The appellant showed no reaction, was not startled, looked right at the Lieutenant and drove on toward Baltimore County. The police followed him and when they were about one and one-half miles within Baltimore County, they forced the appellant over to the side of the road. Lieutenant Byrne got out of the police car, walked up to appellant's car, showed his badge and told him he had a search warrant. The Lieutenant opened the front door of appellant's car and from between his legs on the front seat, found race horse bet slips, which indicated the gambling operation. The officer asked the appellant why he did not stop when the whistle was blown and appellant replied: "I didn't hear you." The evidence in the trial below was confined to what occurred on December 19, 1952. Of course, evidence could have been offered as to the occurrences on December 18, 1952. *Wilson v. State*, 200 Md. 187, 193, 88 A. 2d 564; *Yanch v. State*, 201 Md. 296, 300, 93 A. 2d 749; *Noel v. State*, 202 Md. 247, 96 A. 2d 7.

Seasonable motions were made to quash the search warrant and objections were made to the admission in evidence of the gambling paraphernalia found as a result of the search. The State here admits that the search and arrest were not made in Baltimore City, but in Baltimore County.

Code (1951), Article 27, Section 328, which authorizes the issuing of a search warrant, provides in part: "Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City, or to any judge of any of the Circuit Courts in the counties of this State, or to any justice of the peace in this State, by a writing signed and sworn to by the applicant, that there is probable cause, the basis of which shall be set forth in said writing, to believe that any misdemeanor or felony is being committed by any individual or in any building,

apartment, premises, place or thing within the territorial jurisdiction of such judge or justice of the peace, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then such judge or justice of the peace may forthwith issue a search warrant directed to any duly constituted policeman, constable or police officer authorizing him to search such suspected individual, building, apartment, * * *". In *Frank v. State,* 189 Md. 591, 56 A. 2d 810, a search warrant was issued by a judge of the Supreme Bench of Baltimore City, as in the instant case. The police thought the riding academy to be searched was in Baltimore City, but it was found at the time of the search, and after the building had been entered, that the place searched was in Baltimore County, as in the instant case. It was there admitted by the State that the search warrant was illegal and void. In *Asner v. State,* 193 Md. 68, 65 A. 2d 881, where it was contended that the search warrant issued in Baltimore County should specify that the search be made in Baltimore County, it was said by Chief Judge Marbury: "We find, as we have indicated above, that by Section 306, of Article 27, [now Code (1951), section 328 of Article 27, *supra*], a search warrant may be issued for an automobile and persons in it. See in this connection, *Davis v. U. S.,* 328 U. S. 582, 609, 66 S. Ct. 1256, 90 L. Ed. 1453; *Carroll v. U. S.,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. Of course, such search must be made within the limits of the jurisdiction of the judge or justice of the peace issuing the same. A search warrant cannot have extra territorial effect. We do not, however, think it was necessary in this case to state in the warrant that the automobile must be searched within the limits of Baltimore County. That would be presumed from the statute authorizing its issuance." Although the above quoted statement as to where the search should be made may be considered as dicta, yet the words of

Art. 27, Sec. 328, *supra,* upon which the search warrant here is based, bear out this statement. We must therefore hold that the search based upon the search warrant was unlawful.

It has been held by this Court in a number of cases that although part of a search warrant is invalid, such invalid parts are separate from the valid provisions. It was said in *Wilson v. State, supra,* at page 192: "Recently we held invalid a search warrant which recited an application by 'Sergeant S. Ralph Warnken' because the Act of 1939 [Chapter 749, as amended by the Acts of 1950, Chapter 81, Code (1951), Article 27, Sections 328 and 329] requires that a search warrant shall state 'the name of the applicant on whose written application as aforesaid the warrant was issued'. *Howard v. State,* 199 Md. 529, 531, 87 A. 2d 161, 162. More recently we held that general words in a search warrant, broad enough to include persons on the premises as to whom no probable cause is shown (*DeAngelo v. State,* 199 Md. 48, 85 A. 2d 468), does not invalidate the warrant *in toto,* because the statute does not so provide and the invalid general words are separable from the valid provisions which alone affected the appellant. *Saunders v. State,* 199 Md. 568, 87 A. 2d 618. Also recently we have refused to hold search warrants invalid for a variety of reasons not covered by any provision in the Act of 1939, *e.g.,* manner of service of the warrant, *Carpenter v. State,* 200 Md. 31, 88 A. 2d 180; *Adams v. State,* 200 Md. 133, 88 A. 2d 556; failure to date the search warrant, *Bell v. State,* 200 Md. 223, 88 A. 2d 567; erroneous reference to the Act of 1950, ch. 81, *Carpenter v. State, supra; Saum v. State,* 200 Md. 85, 88 A. 2d 562." In *Martini v. State,* 200 Md. 609, 92 A. 2d 456, it was held that although the description of the man in the warrant was defective, it was within the scope of the warrant to search the automobile. In *Giordano v. State,* 203 Md. 174, 100 A. 2d 31, it was held, assuming that the warrant was invalid as to the search of the automobile, that the direction to search the person

described therein was not void. Here, of course, as the search of the automobile and the person were both made outside of the territorial jurisdiction of the judge who issued it, both searches were unlawful.

Of course, if a misdemeanor be committed in the presence of an officer, who is charged with the enforcement of the law, he is authorized without a warrant to arrest the offender and as an incident of the arrest, is authorized to search the prisoner and take possession of the instruments of the crime found upon his person. *Curreri v. State,* 199 Md. 54, 85 A. 2d 454; *DeAngelo v. State, supra,* and cases there cited. Here, when the officers went to the car, they did not see any of the gambling paraphernalia. This was found only during the search.

The search warrant states "The reasons and probable cause as above set forth, are grounds for requesting the issuance of this warrant, as prescribed by the provisions of Chapter 81, of the Acts of the General Assembly, Session of 1950, [Article 27, Section 328, *supra*]." Therefore, the probable cause set out in the search warrant was for the purpose of the search. There is no provision in Art. 27, Sec. 328, *supra,* for the arrest and seizure of the individual found with the unlawful paraphernalia. This, of course, does not mean that a search warrant under Art. 27, Sec. 328, *supra,* cannot be combined with a warrant for arrest. If the arrest was lawful, the search was lawful, and the articles found on the person were admissible in evidence and the officers were authorized to arrest the individual. Also, if the search was lawful and gambling paraphernalia was found, the arrest was lawful, without a direction to arrest. *DeAngelo v. State, supra,* and cases there cited. The officers not having observed a misdemeanor committed in their presence and the search being unlawful, the arrest was only lawful if they had a valid warrant for the arrest of the appellant, regardless of the search.

The remaining question therefore in this case is whether the direction in the search warrant to bring in the appellant was a valid warrant for his arrest. Eliminating all directions as to the void search under Art. 27, Sec. 328, *supra,* the warrant for arrest is essentially as follows:

"City of Baltimore, Sct.

The State of Maryland to Lieutenant Joseph J. Byrne, of the City of Baltimore, Greeting:

Bring the body of the said white man who is previously described and who is described as being about 30 years of age, 5 feet 8 inches tall, weighing about 145 pounds, wearing glasses and a dark overcoat, before me, the subscriber, or some Police Justice of the said State, in and for the City aforesaid, to be disposed and dealt with according to law. Hereof fail not at your peril and have you then and there this warrant. Given under my hand and seal this 19th day of December, in the year of Our Lord, one thousand, nine hundred and fifty-two.

> (Signed)  Joseph R. Byrnes,
> Associate Judge of the Supreme
> Bench of Baltimore City."

It is stated in *Hochheimer's Criminal Law,* 2nd Ed., Sec. 65, page 81, that among the requisites of a warrant for arrest is that it designate the charge or offense. It is stated in *Maryland Law Review, "The Law of Arrest in Maryland",* by David Kauffman, Vol. V, p. 125, 137, that a valid warrant for an arrest should contain a substantial statement of the offense for which the person is being arrested. *Lynchard v. State,* (1938), 183 Miss. 691, 184 So. 805; *Crichton v. State,* (1911), 115 Md. 423, 81 A. 36. It was said in *Crichton v. State, supra,* at page 433: "Of course, if warrants utterly fail to show any violation of the law, or place a construction on a law which is not justified, there may be ground for the issuing of a writ of *certiorari,* * * *." The warrant of arrest here before us, among other things, does not designate the charge or offense. See *"The Law of*

*Arrest"* by Professor Perkins, 25 *Iowa Law Review,* page 216. We must therefore hold that this was not a valid warrant for the arrest of the appellant. If this was a valid warrant of arrest, the appellant could have been arrested on it and his person and the property within his immediate possession and control searched, *Curreri v. State, supra,* and no search warrant would have been necessary. Such was not the intention of the warrant here.

The use of search warrants was a procedure recognized at common law in Maryland. However, as in England, the common law limited its use to the search for stolen goods. *Hochheimer's Criminal Law,* 1st Ed., Sec. 74, pages 68-71. There were a few minor statutory extensions of the use of search warrants at an early date. By as early as 1860 they were authorized for use in Baltimore City for search and seizure of arms, weapons and ammunition intended to be used in interfering with elections. *Code of Public Local Laws of 1860,* Art. 4, Sec. 225. In the Baltimore City Code of 1879 search warrants were authorized to be used to search places where it was suspected that gunpowder was unlawfully stored, Art. 20, Sec. 57; and to search premises where it was suspected that the gambling laws were being violated, Art. 21, Sec. 4. This latter provision remains in the 1950 Baltimore City Code, Art. 10, Sec. 4. Finally, in 1939 the Legislature passed the general statute authorizing the use of search warrants. Code (1951), Art. 27, Sec. 328, *supra.* See *Sugarman v. State,* 173 Md. 52, 53, 59, 195 A. 324. See also Code (1951), Art. 66C, Sec. 121(a); Art. 2B, Secs. 184(b) and 185.

Apparently, the practice of including within a search warrant a direction to make an arrest is almost as ancient as the use of the search warrant. Generally, search warrants were unknown to the common law. They crept into the law by imperceptible practice and were finally given statutory legality by the Statute of 22 Geo. 3, c. 58, for use only in the search for stolen goods. This statute provided that the person knowingly concealing the stolen

goods or in whose possession the goods were found was deemed to be guilty of a misdemeanor, "and shall be brought before any justice of the peace for the district, and made amenable to answer the same." Thus the directive in the search warrant that the officer arrest the person in whose possession the goods were found. See 1 *Chitty's Criminal Law*, 4th Am. Ed., pp. 64, 65. Historically then, the directive in search warrants to make an arrest is a conditional one. As an arrest warrant for a prior offense it is void because it does not charge the commission of the offense. It is only valid if the search reveals the commission of an offense, and in that event the arrest is for the offense revealed by the search. Thus, if the search is invalid, the arrest under the warrant must also be invalid.

The appellee relies on *Charter & Public Local Laws of Baltimore City*, Flack (1949 Ed.), Sec. 530, p. 324, which states: "* * * any person charged with the commission of crime in the City of Baltimore and against whom criminal process shall have issued, may be arrested upon the same in any part of the State by the police force created under this sub-division of this Article, under such rules and regulations as the Police Commissioner may adopt; * * *." Finding that the warrant in this case did not charge the commission of any crime, this section, of course, is not applicable. See Code (1951), Art. 52, Sec. 19.

Code (1951), Art. 27, Secs. 680 to 687, Sub-title "Fresh Pursuit", relied on by the appellee, applies only to interstate pursuit and is not helpful here. See *Report & Official Opinions of Attorney General of Maryland*, Vol. 25, p. 303. The ancient common law doctrine of fresh pursuit, whereby an officer may pursue a felon or a suspected felon, with or without a warrant for his arrest, into another jurisdiction and arrest him there applies only to cases of felony. See *Hale's Pleas of the Crown*, Vol. 2, p. 94; 4 *American Jur., Arrests*, Secs. 17, 51; *McCaslin v. McCord*, 116 Tenn. 690, 94 S. W. 79, 84, 8 Ann. Cases 245. There is another common law

doctrine of fresh pursuit whereby a peace officer may arrest, without a warrant, for misdemeanors committed in his presence within a reasonable time thereafter. The fresh pursuit affects only the reasonableness of the lapse of time between the commission of the offense and the arrest therefor. See 6 *C. J. S.*, pp. 590, 591. Here, of course, no crime was committed in the presence of the officers.

Finding that the search was invalid; that the motion to quash the search warrant should have been granted and the articles seized thereunder were not admissible in evidence; and that there was no valid warrant for the arrest of the appellant, the judgment will be reversed.

*Judgment reversed and new trial awarded, costs to be paid by the Mayor and City Council of Baltimore City under Chapter 492, Acts of 1953.*