770 A.2d 679

**Antwaun BROWN,**

v.

**STATE of Maryland.**

**No. 73, Sept. Term, 2000.**

Court of Appeals of Maryland.

April 17, 2001.

38

Sherrie B. Glasser, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The central issue in this appeal is whether the Circuit Court for Prince George's County erred in refusing to suppress evidence obtained from a car that was located and seized in Washington, D.C., transported to Maryland, and searched by police pursuant to a Prince George's County search warrant, where the removal of the car from the District of Columbia was done without the owner's permission or the cooperation of Washington, D.C. authorities. As we find that any error in admitting the evidence obtained from the car would be harmless beyond a reasonable doubt, we do not reach the question of whether the admission of such evidence was error.

## I.

On February 26, 1997, Petitioner, Antwaun Brown, was at a gas station with Donovan Strickland and Anthony Crawley when they observed Oliver Smith, an off-duty Washington, D.C. police officer, arrive in a red car. They followed him to a parking lot in his apartment complex in Forestville, Maryland. Strickland and Crawley exited their vehicle, while Petitioner remained in the car. Strickland was carrying a handgun. Strickland approached Officer Smith and ordered him to lie on the ground, which Officer Smith did. Crawley searched Officer Smith, and he removed a pistol and approximately one hundred dollars in cash from him. While searching officer Smith, Strickland discovered his badge, realized that he was a police officer, and alerted his companions. Petitioner then left the car and approached the other men. Strickland handed Petitioner the handgun, and Petitioner shot Officer Smith in the head three times. Officer Smith died as a result of the gunshot wounds.

On February 28, 1997, Petitioner was arrested and charged with first degree murder and related offenses. At the time of his arrest, Petitioner was driving a burgundy Oldsmobile registered in his name. The Oldsmobile was brought to the Prince George's County police evidence bay where it was searched pursuant to a valid search warrant.

After Petitioner's arrest, the police discovered that he owned a second vehicle, a silver Cadillac. A police officer went to Petitioner's residence in Landover, Maryland and discovered the Cadillac parked in front of the home. The officer obtained search warrants for Petitioner's home and the Cadillac. When the police arrived at Petitioner's home to conduct the searches, however, the Cadillac was gone. During their search of the home, Petitioner's mother informed them that the Cadillac had been driven to the 800 block of Barnaby Place in southeast Washington, D.C.

The Prince George's County police located the Cadillac in Washington, D.C. and had it towed to the Prince George's County police headquarters in Landover, Maryland, where it

was searched pursuant to the warrant. They recovered a blue nylon bag containing a .32 caliber handgun and ammunition from the trunk of the Cadillac. The handgun was later identified as the murder weapon.

After his arrest, Petitioner was questioned by the police, eventually admitting that he shot Officer Smith but asserting that the shooting was an accident and that he was intoxicated at the time.

Petitioner filed a pretrial motion in the Circuit Court for Prince George's County to suppress the evidence seized from the Cadillac, arguing that the police exceeded the scope of their authority in retrieving the Cadillac from the District of Columbia. The court denied the motion to suppress on the grounds that the police were acting as private citizens when they were in the District of Columbia and that the search was permissible because it did not occur until the vehicle was back in Maryland.

Petitioner proceeded to trial in March 1998, but that trial resulted in a mistrial because the jury was unable to. reach a unanimous verdict. A second trial was held on September 28, 1998 through October 5, 1998, and Petitioner was convicted of first degree murder, robbery with a deadly weapon, robbery, unlawful use of a handgun, and two counts of conspiracy to commit robbery. He was sentenced to a term of confinement of life without the possibility of parole for the murder charge, as well as terms of confinement for a total of sixty years for the robbery and handgun offenses, to be served consecutively.

Petitioner filed a timely notice of appeal in the Court of Special Appeals, which affirmed his convictions. *See Brown v. State,* 132 Md.App. 250, 752 A.2d 620 (2000). The court held that the seizure of the car was not unreasonable, even though the search warrant was not valid in the District of Columbia, because the police had probable cause to believe that the Cadillac contained evidence of the crime, as evidenced by the search warrant, and because of the exigency of the situation, given that the car was readily mobile and had been moved out of the jurisdiction while Petitioner was in police custody.

We granted certiorari to determine whether the trial court erred in refusing to suppress evidence seized from the Cadillac after the car had been seized in the District of Columbia and transported to Maryland, without the permission of the owner or the cooperation of the Washington, D.C. authorities, and searched pursuant to a warrant issued by a Prince George's County court.

## II.  Seizure of the Car and Resulting Evidence

The evidence of Petitioner's guilt in this case was overwhelming.  In an interview with the police while he was in custody, Petitioner admitted to police that he was the one who pulled the trigger, but, in a written statement, asserted that it had been an accident, that he had been standing over Officer Smith with the gun in his hand, getting ready to leave, when Officer Smith had grabbed his leg, and the gun had gone off. Petitioner's defense at trial was that the shooting of Officer Smith was an accident.  Petitioner contends that, without the handgun that was seized from the Cadillac and the results of the firearms examination that was performed on it, the State would not have been able to prove that the gun did not discharge accidentally, thereby directly refuting Petitioner's accident defense.  We disagree.

Both the testimony of Anthony Crawley, one of Petitioner's accomplices who witnessed the murder, and the uncontroverted forensic evidence regarding the fatal gunshot wounds directly refuted Petitioner's claim that the shooting was an accident.  Crawley testified that he saw Strickland hand Petitioner the gun and that Petitioner walked over to Officer Smith.  Crawley testified that Petitioner was standing over Officer Smith, holding the gun to his head.  He testified that he heard a shot, looked back over to where Petitioner and Officer Smith were, and saw the flash of two more shots, after which Petitioner ran back to the car and got in.

Even more damning to Petitioner's accident defense was the unchallenged forensic evidence introduced at trial.  Dr. Dennis Chute, a forensic pathologist, was the Assistant Medical Examiner for the State of Maryland who performed the

autopsy on Officer Smith. Dr. Chute testified that Officer Smith died as the result of three gunshot wounds to the head. Two were located at the back of the head—one in the middle and the other a little higher up the back of Officer Smith's head. The third gunshot wound was located behind his right ear, about four inches below the top of his head. Dr. Chute testified that, based on the blackening of the edges of the wounds and the deposits of gunpowder in the wound tracks, all three gunshot wounds were contact wounds, leading to the conclusion that the muzzle of the gun was pressed up against Officer Smith's skin when it was fired. Dr. Chute also testified that the paths of the bullets went from the back to the front of Officer Smith's head with a slightly upward trajectory.

Clearly, the forensic evidence and Crawley's eyewitness statement directly contradict Petitioner's claim that the shooting was accidental, particularly since Petitioner admitted that he fired the fatal shots. The gun itself and the results of the weapons examination were merely cumulative. We are convinced that the collective effect of the other evidence in this case, in which Petitioner admitted criminal agency, so outweighs the prejudicial nature of the admission of the gun and the weapons examination that there is no reasonable possibility that the jury's verdict would have been different had the evidence been excluded. *See Ross v. State,* 276 Md. 664, 674, 350 A.2d 680, 686–87 (1976). Therefore, assuming error, *see Gattus v. State,* 204 Md. 589, 105 A.2d 661 (1954), their admission was harmless beyond a reasonable doubt in light of the totality of the evidence admitted at Petitioner's trial. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976) (holding that error is harmless if the reviewing court finds, beyond a reasonable doubt, that the error in no way influenced the verdict); *see also Rubin v. State,* 325 Md. 552, 578–79, 602 A.2d 677, 689–90 (1992) (finding the admission of testimony that should have been excluded harmless beyond a reasonable doubt because of overwhelming evidence of guilt, including unchallenged forensic evidence refuting the appellant's self-defense defense), *habeas corpus granted on other grounds, Rubin v. Gee,* 128 F.Supp.2d 848 (D.Md.2001) (holding that the

petitioner's Sixth Amendment right to the effective assistance of counsel was denied because of conflicts of interest surrounding two of her attorneys).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

BELL, C.J., dissents.

BELL, Chief Judge, Dissenting.

It is true, to be sure, that no one is entitled to a perfect trial, just a fair one. Thus, when there has been error committed in a trial and that error prejudices the defendant, it is universally held that the defendant is entitled to a new trial. In Maryland, the test is the one enunciated in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976) (footnote omitted):

> "[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

Thus, it is the effect that erroneously admitted or excluded evidence has on the verdict rendered by the trier of fact that is the object of the inquiry addressed to the reviewing court. Once the appellate court determines that error was committed, reversal is required unless it also determines, beyond a reasonable doubt, that the error did not influence the verdict; harmless error occurs only if the error played no role in the trier of fact's verdict. *See State v. Enriquez,* 327 Md. 365, 374, 609 A.2d 343, 347 (1992); *Johnson v. State,* 325 Md. 511, 522, 601 A.2d 1093, 1097–98 (1992); *Bowie v. State,* 324 Md. 1, 11, 595 A.2d 448, 452 (1991); *Hook v. State,* 315 Md. 25, 42, 553 A.2d 233, 242 (1989).

Where, however, evidence is obtained as a result of an illegal search and seizure, in violation of the Fourth Amend-

ment, it must be excluded and can not be used against the defendant from whom or as to whom it was illegally obtained. *See Mapp v. Ohio*, 367 U.S. 643, 650, 81 S.Ct. 1684, 1689, 6 L.Ed.2d 1081, 1090 (1961). This is because the exclusionary rule is intended to curb improper police conduct, which it accomplishes by disallowing the use of the evidence illegally obtained, *Potts v. State*, 300 Md. 567, 582, 479 A.2d 1335, 1343 (1984); "[t]he primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights. Post-*Mapp* decisions have established that the rule is not a personal constitutional right." *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067, 1083 (1976).

It is true that there is, and comments on this fact have been extensive and frequent, substantial social costs associated with the enforcement of the exclusionary rule for the vindication of Fourth Amendment rights. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court made clear that the exclusionary rule is a judicially created prophylactic remedy and not part of the constitutional entitlement of the defendant, noting that the Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands and thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* at 906, 104 S.Ct. at 3411–12, 82 L.Ed.2d at 687. Considering the underlying rationale of the exclusionary rule and quoting *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182, 194 (1974), and *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374, 389–90 (1975), the Supreme Court concluded:

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counter-

parts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

*Leon,* 468 U.S. at 919, 104 S.Ct. at 3418, 82 L.Ed.2d at 696.

There is, thus, a reluctance to extend the reach of the exclusionary rule and more and more vigilance to limit its application. Where, however, it performs the office for which it was created, *i.e.,* deters unlawful police conduct, by suppressing evidence from a search where the law enforcement officer had knowledge, or may properly be charged with knowledge, of the illegality of the search, *Peltier,* 422 U.S. at 539, 95 S.Ct. at 2318, 45 L.Ed.2d at 393; see *Ott v. State,* 325 Md. 206, 212, 600 A.2d 111, 114 (1992), it remains, as well as it should, alive and well.

In this case, there can be no doubt that the police officers had knowledge of the illegality of the seizure of the petitioner's car, or, at the very least, is chargeable with that knowledge. A search warrant issued by one jurisdiction does not have extra-territorial effect, such that it can be executed by the officials of the issuing jurisdiction in another jurisdiction, without the knowledge or assistance of that other jurisdiction. That is so clear that bad faith can be attributed to the officers for proceeding as they did. The fruits of that search must be suppressed.

The majority does not disagree. Nor does it agree. Rather than reach the issue of the legality of the search, it holds that harmless error analysis applies and, so, assuming error, affirms the petitioner's conviction, declaring its belief beyond a reasonable doubt that the introduction of the evidence did not matter. This approach does absolutely nothing to address the police misconduct. And it does nothing to advance the policy of deterrence to which the exclusionary rule is dedicated.

The goal of deterrence of official misconduct is served by addressing the issue of police misconduct. It is accomplished when, where it has occurred, that misconduct has been identified and the consequences of engaging in it are imposed as a

matter of course and inexorably. In the case of an illegal search and, as in this case, seizure, this means adjudicating the issue, labeling the seizure of the car from the District of Columbia, without benefit of assistance from the District of Columbia officials, as illegal and expressly and unequivocally, excluding its use, as well as its fruits, as evidence. There simply is no doubt in this case, as previously indicated, that the police conduct was willful and that the police had knowledge, or should have known, of the illegality of the seizure of the car in the District of Columbia.

To justify its harmless error conclusion, the majority states that the gun, which was discovered during the search of the car after it had been brought back to Maryland, and its examination, were, given the petitioner's defense, merely cumulative. It notes that the petitioner did not deny his criminal agency, but maintained only that the shooting was an accident. Juxtaposed against that defense, the majority points out, is the testimony and forensic evidence that contradicted the petitioner's version of events.

This case was tried to a jury. I have previously stated my concern when an appellate court, in the guise of reviewing a trial judgment, substitutes its judgment for that of the jury. *See Bruno v. State,* 332 Md. 673, 696–700, 632 A.2d 1192, 1203–06 (1993) (Bell, J. dissenting); *Rubin v. State,* 325 Md. 552, 591–601, 602 A.2d 677, 696–700 (1992) (Bell, J. dissenting). Not only does the majority weigh the evidence, which is not the office of appellate review of a criminal judgment, but it purports to know the impossible, what evidence the jury found persuasive.

There is another reason to address head-on the police misconduct issue in this case. The Court of Special Appeals concluded that the seizure of the car was reasonable. *See Brown v. State,* 132 Md.App. 250, 270, 752 A.2d 620, 631 (2000). Without clear direction from this Court, the guidance that law enforcement needs, and thus the goal of deterrence, can not be achieved. The majority opinion merely assumes error, leaving the police free to follow the opinion of the

intermediate appellate court and its expansive authority to seize on probable cause under the Fourth amendment.

I dissent.